STAPLES *v*. FREEMAN.

## Opinion delivered December 23, 1918.

1. INJUNCTION—TRESPASS TO REALTY—TITLE.—The holder of a recorded warranty deed, suing to enjoin defendant from trespassing on the land purchased by him, established his title by introducing his deed from a vendor under whom defendant claimed under an unrecorded prior lease.

2. VENDOR AND PURCHASER—BONA FIDE PURCHASER.—A defendant in an injunction suit who set up a right of possession under a prior unrecorded lease from plaintiff's grantor had the burden of establishing his right to possession by showing that the purchaser had actual notice of such lease or knowledge of facts which would have put a man of ordinary prudence upon inquiry which if pursued, with reasonable diligence, would have led to knowledge of defendant's possession.

3. VENDOR AND PURCHASER—BONA FIDE PURCHASER—PROOF OF ACTUAL NOTICE.—Actual notice may be proved by direct or positive evidence that notice was personally given to the person to be notified or by circumstances warranting the inference that actual notice was given; it being a question of fact provable by any legitimate evidence tending to strengthen or impair such conclusion.

4. VENDOR AND PURCHASER—BONA FIDE PURCHASER—NOTICE.—In an action by a purchaser having record title to enjoin a trespass by defendant claiming under a prior unrecorded lease from the same vendor, evidence *held* to sustain a decree dismissing the complaint for want of equity on account of the purchaser having notice of defendant's possession.

Appeal from Pulaski Chancery Court; *J. E. Martineau*, Chancellor; affirmed.

STATEMENT OF FACTS.

The appellant sued the appellee, seeking to enjoin the latter from trespassing upon a certain tract of land which he described in his complaint. The appellant alleged that he was the owner of the land having purchased the same from one R. L. Wilder on the 4th day of December, 1917; that at the time of its purchase the land was unoccupied; that he had his deed recorded on January 26, 1918; that the appellee had entered upon the land over the objection of the appellant and was proceeding to plow and prepare same for cultivation; that the appellant had made ar-

rangements himself for the cultivation of the land; that unless appellee was restrained from interfering with appellant, he would do appellant great and irreparable injury; that the appellee was insolvent and that the appellant had no adequate remedy at law.

The appellee answered, denying that he was a trespasser upon the appellant's land; denying that the lands were vacant and unoccupied as alleged by the appellant at the time of his purchase. The appellee alleged that, before the purchase of the appellant, he had leased the lands for a period of five years; that his lease had not expired at the time of appellant's purchase; that appellee had entered into possession and had made valuable improvements upon the lands, among other things having planted four acres in alfalfa which had just begun to produce large amounts of valuable hay and which would yield the sum of $400 per annum profit. He alleged that the appellant at the time of his purchase had knowledge of appellee's lease and he prayed that appellant be enjoined from interfering with his possession.

The appellant testified that he was the owner of the land in controversy having purchased the same from R. L. Wilder December 4, 1917, and received a warranty deed which he had recorded January 26, 1918; that before his purchase he examined the land; that same was not under fence; that there was a little cotton shed or shack in the northwest corner, but no dwelling house or barn on it; that there was no indication that the land was occupied; no people, no tools, implements, or anything that he could see to indicate that anybody was in possession of, or owned it. He thought he had a clear title. He made a search of the records at the Pulaski County courthouse for all incumbrances and there was no indication on the record of a lease. Appellant found out after he had purchased the land, that Freeman had cultivated the land the year before. He then saw Freeman who told him that he had a lease on the place. This occurred after the appellant's deed was recorded and was the first time that he had any intimation that Freeman claimed any right

to the land by virtue of a lease; that Wilder never transferred any lease and did not make any statement that any one had any right or title to the land at all. Appellant further stated that when he went to look at the land before its purchase, he saw nothing growing on it that looked like alfalfa or millet; that he saw some corn stalks, but the corn had been gathered; that he did not know by whom it had been cultivated, and saw no one whom he could ask about it; that he, appellant, knew nothing about farming. He did not ask Wilder what the land had been renting for. Appellant paid $3,500 cash for the land.

The appellee testified that he went into possession of the land about March 15, 1915, and worked the same during the years 1915, 1916 and 1917. The second year he put in four acres of alfalfa, from which he received $200 last year and was expecting $400 this year. He had planted a garden, cotton and corn every year he had been there. There had been a house there but the wind blew it down and he rebuilt it. He stayed in the house part of the time from two to three weeks. He had about five acres in corn, about twenty acres in cotton, and made about six bales. There were 28 or 30 acres in cultivation. Appellee knew the appellant and saw him on the place once. Appellee saw the appellant and another white man pick up the loose soil and look at it. Appellee said to appellant, "If you do buy it you can't work it for the next two years." He told appellant that he had a lease for two years. Appellee told everybody that he had a lease and so informed the appellant. Appellant was paying $140 a year rent for the land. He had cleared about three acres, had rebuilt the house, and dug up stumps on the place. All his plow tools and other tools were in the shed. Appellee was going by his lease. He was already on the land.

A witness by the name of Cobb testified that Freeman had been working the land for three years; that witness worked part of it in 1917. There was a corn, cotton, a truck garden, and an alfalfa patch on the place. All of Freeman's tools were down there and part of them were in the house and they stayed there all the year. Witness

saw the appellee talking to the appellant but did not pay any particular attention to them.

The deed from the vendor, Wilder, to the appellant was made an exhibit to his complaint and a copy of the lease from Wilder to the appellee was made an exhibit to his answer. The cause was heard upon the pleadings and the exhibits thereto, and upon the testimony which was substantially as above stated. The court entered a decree dismissing appellant's complaint for want of equity, from which decree is this appeal. Other facts stated in the opinion.

*Carmichael & Brooks,* for appellant.

No lease being of record whereby constructive notice would be given, notice by occupancy must be such as to constitute actual notice to a *bona fide* purchase for value and as between the parties plaintiff has the right to the present possession of the land. Plaintiff had no notice, actual or implied. The burden was on defendant to show actual notice, or such facts and circumstances as to imply notice from facts so visible and notorious that disregard thereto would constitute culpable negligence. 20 R. C. L. 340-1; 1 Am. St. 295; Kirby's Digest, § 763; 20 L. R. A. 340; 79 Me. 195; 130 Ark. 445; 126 *Id.* 92; 128 *Id.* 331.

*W. H. Pemberton,* for appellee.

The testimony shows actual and implied notice. It was incumbent on appellant to make diligent inquiry to learn the nature of appellee's interest as appellee was in possession and exercising acts of ownership. If he did not notice will be imputed to him. 101 Ark. 161; 16 *Id.* 340; 28 *Id.* 523; 47 *Id.* 533; 66 *Id.* 167; 82 *Id.* 455; 90 *Id.* 149; 126 *Id.* 92.

The possession and acts of ownership were visible, open and notorious. See 1 Cal. 254; 147 N. Y. 456; 181 Ill. 382; 53 Ark. 88; 35 U. S. 412; 87 Ill. 578. The findings of the chancellor are correct.

WOOD, J., (after stating the facts). The appellee did not have his lease recorded. Therefore, the appellant was

not bound to take notice thereof. The burden was upon the appellant to establish his title, and this he did by introducing his deed from the vendor, under whom also the appellee claimed the right of possession by virtue of his lease. Appellee having set up a right of possession adverse to the owner of the fee, the burden was upon him to establish his right to such possession by showing that the appellant had actual notice of his possession, or had knowledge of such facts as would lead a man of ordinary prudence to make inquiries, which, if pursued with reasonable diligence, would have led to knowledge of the fact of appellee's possession. *Love* v. *Cowger,* 130 Ark. 445; *Knapp* v. *Bailey,* 79 Me. 195, 1 Am. State Repts. 295 and cases cited in note.

Actual notice may be proved by direct or positive evidence to the effect that notice was personally given to the person to be notified, or it may be established by circumstances which warrant the inference that actual notice was given. The general rule is ''that actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in inferring notice. It is a mere question of fact, and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion.'' 20 Rul. Case Law, 340.

The appellee testified that he personally informed the appellant when the latter ''looked like he was going to buy the land'' that he (appellee) had a lease on it for two years, and the testimony of witness Cobb tends to corroborate the testimony of the appellee to the effect that the appellant had personal notice at the time of his purchase that the appellee had a lease on the land. Moreover, the circumstances were sufficient to put a man of ordinary prudence upon inquiry as to whether or not the land was in possession of another at the time of its purchase. Appellee had cultivated the land three years immediately preceding the purchase by the appellant. Evidences that the land had been and was being cultivated

were plainly obvious to the appellant as he testified himself, for he says, "It had evidences of being cultivated, but by whom I did not know. I did not ask Wilder how much he rented the land for; did not make any inquiry about it."

Without discussing further the evidence in detail, which could serve no useful purpose, we are convinced that the finding of the chancery court is sustained by a preponderance of evidence. The decree is therefore correct, and is affirmed.